## NORTHEAST WOMEN'S CENTER, INC.

v.

**Michael McMONAGLE, Dennis Sadler, Deborah Baker, Thomas Herlihy, Anne Knorr, Robert Moran, Joseph P. Wall, Roland Markum, Howard Walton, Henry Tenaglio, Stephanië Morello, Annemarie Breen, Ellen Jones, Susan Silcox, Paul C. Armes, Walter G. Gies, John J. O'Brien, Patricia Walton, Kathy Long, Helen Gaydos, Donna Andracavage, Juan Guerra, Margaret Caponi, Mary Bryne, Linda Corbett, Thomas McIlhenny, and Patricia McNamara.**

Civ. A. No. 85–4845.

United States District Court,
E.D. Pennsylvania.

June 8, 1987.

Edmund A. Tiryak, Philadelphia, Pa., for plaintiff.

Charles F. Volz, Philadelphia, Pa., Theresa M. Connolly, Jenkintown, Pa., Joseph Stanton, Ardmore, Pa., Thomas Short, Norristown, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

The plaintiff Northeast Women's Center, Inc. ("Center") is a Pennsylvania corporation engaged in the business of providing pregnancy testing, gynecological care, counseling, and abortion procedures at a facility in Northeast Philadelphia. The defendants[1] are anti-abortion activists who have participated in various protest activities both outside and inside the Center. As a consequence of these protest activities, the plaintiff brought this civil action seeking money damages and injunctive relief under the Sherman Antitrust Act, 15 U.S.C. §§ 1, 15; the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1964(c); and the common law torts of trespass and intentional interference with contractual relations.

At the close of eleven days of testimony, the court directed the verdict on the plaintiff's antitrust count. *Northeast Women's Center, Inc. v McMonagle*, No. 85–4845, slip op. (E.D.Pa. May 8, 1987). The RICO, trespass, and interference with contract claims were then sent to the jury. Following four days of deliberations, the jury returned its verdict. The jury found all twenty-seven remaining defendants liable under RICO and assessed $887 in damages. The jury found twenty-four of the defendants liable for trespass and assessed $42,087.95 in compensatory damages and $48,000 in punitive damages. The jury found that three defendants had interfered with the Center's employee contracts, but determined that the Center had sustained no proximate loss as a result. Thus, the jury awarded no damages on the interference with contract claim.

The court now addresses the plaintiff's petition for a permanent injunction and the defendants' motion for judgment notwithstanding the verdict. In accordance with the jury's answers to special interrogatories and the rulings of this Memorandum, a complete entry of judgment is attached.

## I. PERMANENT INJUNCTION

### A. *Consolidation with Trial on Merits*

The original complaint in this action was filed on August 20, 1985. On May 27, 1986, the plaintiff moved for a temporary restraining order and/or preliminary injunction to restrain the defendants' protest activities at the Center. The court conducted a two-day evidentiary hearing on the plaintiff's motion on June 3–4, 1986. On June 12, 1986, the court issued its decision denying the injunction. In the accompany-

---

[1]. The original complaint in this matter was brought against thirteen individuals. Following a subsequent entry into the plaintiff's facility in October 1985, the complaint was amended to add twenty-nine new defendants, bringing the total number of persons sued to forty-two. Prior to trial, the plaintiff dismissed five of the forty-two defendants: Joan Andrews, John Breen, John Murray, Pat Ludwig, and Earl Essex. During the oral argument on the defend-ants' Fed.R.Civ.P. 50(a) motion, the plaintiff dismissed six others: Gerald Lynch, Steven Elliott, Laurie Wirtel, Harry Hand, Miriam Dwyer, and James Codichini. The court granted a full directed verdict in favor of four defendants: John Stanton, Linda Hearn, John Connor and Pasquale Varallo. Twenty-seven defendants remained in the case when the jury began their deliberations. These twenty-seven names only are listed in the caption.

ing Memorandum, the court explained that the plaintiff had failed to demonstrate irreparable harm and had been unable to prove that its probability of succeeding on the federal claims was strong. *Northeast Women's Center, Inc. v. McMonagle*, No. 85–4845, slip op. (E.D.Pa. June 12, 1986) [Available on WESTLAW, DCT database].

The plaintiff appealed this ruling to the United States Court of Appeals for the Third Circuit. On appeal, the Third Circuit vacated the June 12 Order, holding that the Order failed to specifically articulate the findings of fact as required by Federal Rule of Civil Procedure 52(a). *Northeast Women's Center, Inc. v. McMonagle*, 813 F.2d 53, 54 (3d Cir.1987). The Third Circuit remanded the matter to this court with instructions to specifically set forth its findings of fact. However, the Third Circuit suggested, "in the strongest possible terms, that instead of seeking the court's compliance with our mandate, the parties agree to convert the action into a final injunction hearing." *Id.* at 54–55. The parties reached such an agreement during a pre-trial conference in early March 1987 and the injunction hearing was consolidated with the trial on the merits scheduled to begin in April 1987. *See* Fed.R.Civ.P. 65(a)(2); *University of Texas v. Camenisch*, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).

### B. *Preliminary Objections*

In opposing the plaintiff's petition, the defendants raise two preliminary objections challenging the court's authority to issue an injunction. First, the defendants contend that the plaintiff's petition is precluded by the doctrine of collateral estoppel. Second, the defendants assert that equity cannot enjoin the commission of criminal offenses. The court finds no merit to either objection.

### 1. *Collateral Estoppel*

The defendants note that the Center has twice before sought, and been granted, injunctions limiting protest activities outside its facility. They have introduced into evidence copies of both injunctions. The first,

issued on December 23, 1977 by Philadelphia Common Pleas Court Judge Harry Takiff, was entered against "defendants Jean Neary, shareholders, officers, employees, and members of the corporation known as Save Our Unborn Lives ('SOUL'), individuals identified as members of or participants with the group or association known as 'Shield of Roses', and all other persons acting under, by, through, or in concert with them and any of them." *Northeast Women's Center, Inc. v. Save Our Unborn Lives*, No. 5700, May 1977 Term, slip op. at 3 (C.P.Phila.County Dec. 23, 1977) (introduced as "C–1"). The injunction enjoined any trespass onto the plaintiff's 9600 Roosevelt Boulevard premises, any obstruction of an adjacent or contiguous public sidewalk or street, and any nearby use of a sound amplification device or recording. *Id.*

A second injunction was issued by Judge Takiff on August 31, 1983. This injunction was also entered against Jean Neary, SOUL, "and all other persons acting under, by, through, or in concert with them and any of them." *Northeast Women's Center, Inc. v. Save Our Unborn Lives*, No. 5688, July 1983 Term, Order at 1 (C.P.Phila.County Aug. 31, 1983) (introduced as "C–2"). This second Order also concerned the 9600 Roosevelt Boulevard premises. In addition to the restrictions listed in the first injunction, the August 1983 Order enjoined the presence of more than six defendants at one time, instructing the six to "at all times remain in motion in single file, at a distance of no less than five (5) feet apart from each other." *Id.* at ¶ 2. The Order also enjoined the use of "any abusive or threatening language", *id.* at ¶ 3, and the erection of any "stationary signs or other physical objects on the private walkways, driveways or parking lots," *id.* at ¶ 6.

Both the December 1977 and the August 1983 injunctions were preliminary, pending trial on the merits. The defendants assert that the August 1983 Order was in force when the plaintiff filed this federal action in August 1985. According to the defendants' chronology of events, the plaintiff failed to appear when the state court called

its case for trial and was "nol prossed." Defendants' Proposed Findings of Fact (Document # 190) at 8–9. Although it is unclear precisely what the defendants mean when they state that a civil plaintiff was "nol prossed", this court assumes for the purposes of this Memorandum that the state court judge dissolved the August 1983 injunction and either entered judgment against the non-appearing plaintiff or dismissed the case with prejudice. Irrespective of the finality of those Orders, the fact of their issuance and the subsequent default has no preclusive effect in this present federal action.

■ The doctrine of collateral estoppel precludes the relitigation of an issue already resolved. It effectuates the public policy that there be an end to litigation, "that those who have .contested an issue shall be bound by the result of the contest; and. that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Iowa State Traveling Men's Ass'n.*, 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). Collateral estoppel, however, will not preclude the relitigation of an issue unless that issue is identical to one presented and resolved in a prior lawsuit. *Public Serv. Mut. Ins. Co. v. Cohen*, 616 F.2d 704, 707 (3d Cir.1980). Giving the state court resolution of the plaintiff's injunction requests the broadest and most decisive effect possible, collateral estoppel is still not implicated in this case. The issues before Judge Takiff are clearly distinct from those presented here.

First, the most recent state court Order was issued more than a year before the first trespassory entry occurred at the Center on December 8, 1984. This novel mode of protest was evidently not before Judge Takiff. Even in the event the plaintiff had appeared to argue its case in 1983 and had been soundly defeated on the merits, the unlawful entries were certainly new developments creating for the plaintiff a new right of action. Second, by their terms both injunctions related exclusively to the plaintiff's facility at 9600 Roosevelt Boulevard. When the plaintiff moved to its new site off Comly Road, it left the protection of the Takiff Orders. Absent a modification or amendment by Judge Takiff, the prior injunctions would have done nothing to enjoin the protesters' conduct at Comly Road. Finally, the defendants have made no attempt to analogize their conduct at Comly Road with the activities enjoined at 9600 Roosevelt Boulevard. The evidence at trial suggested that the protest activities grew more spirited, dynamic, and boisterous in recent years. Consequently, the increasing intensity of the protests would have entitled the plaintiff to a third injunction petition.

### 2. *Equity's Power to Enjoin Criminal Offenses*

■ The defendants correctly quote the Supreme Court of Pennsylvania that "[i]t is well established that equity will not act merely to enjoin the commission of· a crime...." *Commonwealth ex rel. Costa v. Boley*, 441 Pa. 495, 272 A.2d 905, 908 (1971). However, through what the court trusts was inadvertent oversight,[2] the defendants neglected to quote the end of the supreme court's sentence. In full, the statement reads: "It is well established that equity will not act merely to enjoin the commission of a crime, although the criminal nature of defendant's conduct will not bar equity from assuming jurisdiction if that conduct has interfered with plaintiff's individual property rights." *Id.; accord Pennsylvania Soc'y for Prevention of Cruelty to Animals v. Bravo Enter., Inc.*, 428 Pa. 350, 237 A.2d 342, 347 (1968). Because the proper and complete quotation of the supreme court eviscerates the defendants' objection, no further analysis is required.

### C. *Requirements for Permanent Injunction*

■ In order for a permanent injunction to issue, the plaintiff must satisfy three requirements. First, the plaintiff must demonstrate that the court's exercise of equity jurisdiction is proper. *Younger v. Harris*, 401 U.S. 37, 43–44, 91 S.Ct. 746,

---

**2.** *Cf.* Pennsylvania Code of Professional Responsibility DR 7–102(A)(2) & (A)(5) (adopted 1974).

750, 27 L.Ed.2d 669 (1971). Second, the plaintiff must actually succeed on the merits of its claims. *Ciba-Geigy Corp. v. Bolar Pharmaceutical Co.,* 747 F.2d 844, 850 (3d Cir.1984), *cert. denied,* 471 U.S. 1137, 105 S.Ct. 2678, 86 L.Ed.2d 696 (1985). Third, the plaintiff must show that the balance of equities tips in favor of injunctive relief. *Id.*

■ If an injunction should issue, the court has wide discretion in fashioning an appropriate remedy. *Consumer Party v. Davis,* 778 F.2d 140, 146 (3d Cir.1985). But this discretion is constrained by precautionary considerations. The injunction that issues may not be drawn to enjoin all conceivable breaches of the law; it must instead be carefully tailored to remedy only the specific harms shown. *Davis v. Romney,* 490 F.2d 1360, 1370 (3d Cir.1974). It may be no broader than is necessary to restrain the unlawful conduct. *Educational Testing Serv. v. Katzman,* 793 F.2d 533, 545 (3d Cir.1986). The injunction, as drafted, should constitute "the least intrusive remedy that will still be effective." *Ruiz v. Estelle,* 679 F.2d 1115, 1145 (5th Cir.) *aff'd in part and vacated in part on other grounds,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

### 1. *Equity Jurisdiction*

■ The threshold hurdle for a permanent injunction requires that the plaintiff establish that its request would constitute a proper exercise of the court's equitable jurisdiction. Equity jurisdiction is proper if (1) the plaintiff has no adequate legal remedy, (2) the threatened injury is real, not imagined, and (3) no equitable defenses preclude jurisdiction. 11 C. Wright & A. Miller, *Federal Practice and Procedure,* §§ 2942–44 (1973).

■ It is a "basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief."[3] *Younger,* 401 U.S. at 43–44, 91 S.Ct. at 750. The legal remedy is inadequate if the plaintiff's injury is a continuing one, where the best available remedy at law would relegate the plaintiff to filing a separate claim for damages each time it is injured anew. 11 Wright & Miller, at § 2944, at 398.

■ In its role as a court of equity and as required by Federal Rule of Civil Procedure 52(a), the court finds the following facts specially. The evidence adduced at trial demonstrated that the defendants have appeared regularly at the sites of the Northeast Women's Center to protest. Each of the twenty-four defendants found liable for trespass had entered the premises of the Center on at least one and as many as three occasions. On none of the trespass dates had the Center willingly permitted the defendants to enter the premises. The defendants are motivated by a vibrant and unwaveringly view that the practice of abortion is a heinous evil that cannot be endured. The spirited nature of their views permits no remorse or regret for their actions. No evidence produced at trial suggests that their unlawful modes of protest will cease. In fact, the evidence suggests precisely the opposite. The pendency of this lawsuit has not deterred the defendants from unlawful protest activities. Since this suit was filed in August 1985, each of the twenty-four trespassers has been present at the Center when illegal entries were made and nineteen of the twenty-four have actually entered the premises. Since the move to Comly Road in June 1986, the Center has been the site of at least one attempted illegal entry, thwarted only by the installation of sophisticated security equipment.

As a result of the foregoing, the court reaches the following conclusion of law

---

**3.** Although the Supreme Court has commented broadly that equity will not act where the petitioner has an adequate remedy at law and will not suffer irreparable injury if denied relief, a showing of irreparable injury is not an independent element for obtaining permanent injunctive relief. Rather, irreparable injury is simply one basis for showing the inadequacy of the available legal remedy. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2944, at 399–401 (1973).

which it sets forth specially as required by Federal Rule of Civil Procedure 52(a). The plaintiff's injury is found to be a continuing one for which no adequate legal remedy is available.

When an injunction is sought to enjoin a threatened injury, the injury feared must be real, not imagined. "The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat...." *Holiday Inns of America, Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir.1969). *See also Association of. Professional Eng'g Personnel v. Radio Corp. of America*, 183 F.Supp. 834, 839 (D.N.J.1960), *rev'd on other grounds*, 291 F.2d 105 (3d Cir.), *cert. denied*, 368 U.S. 898, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).

■ As the facts set forth above reveal, the nature of the defendants' motivation and their conduct since this lawsuit was filed demonstrates that there exists a present, actual threat of trespass at the Comly Road site. Consequently, the court reaches the following conclusion of law which it sets forth specially. The plaintiff's fear of future injury is real and not imagined.

■ An exercise of equitable jurisdiction that is otherwise proper is nonetheless precluded by the assertion of a valid equitable defense. In their memorandum opposing an injunction, the defendants assert the clean hands defense.[4] If this defense is successfully established, the tenets of equity command that the plaintiff be denied relief irrespective of the actual merits of its claim. *Gaudiosi v. Mellon*, 269 F.2d 873, 881–82 (3d Cir.), *cert. denied*, 361 U.S. 902, 80 S.Ct. 211, 4 L.Ed.2d 157 (1959). "[T]he doors of the court will be shut against him ...; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy." 2 J. Pomeroy, *A Treatise on Equity Jurisprudence* § 397, at 91–92 (5th ed. S. Symons 1941).

■ The clean hands maxim demands that one who comes to equity seeking relief must come with clean hands and must keep those hands clean throughout the pendency of the litigation. *Gaudiosi*, 269 F.2d at 881. Because a court of equity acts "only when and as conscience demands ..., any willful act in regard to the matter in litigation, which would be condemned and pronounced wrongful by honest and fairminded men, will be sufficient to make the hands of the applicant unclean." 2 Pomeroy, *supra*, at § 404, at 143. In applying the clean hands maxim, the court is concerned primarily with its own integrity as a forum of equity. *Gaudiosi*, 269 F.2d at

---

4. The plaintiff's sole opposition to the clean hands defense is its assertion that the defense was precluded by the court's Order of February 12, 1987. In that Order, the court granted the plaintiff's motion to prohibit the defendants from introducing evidence of any basis for their opposition to the Center's operations other than their personal views on abortion. *Northeast Women's Center, Inc. v. McMonagle*, No. 85–4845, slip op. at 19 (E.D.Pa. Feb. 12, 1987) [Available on WESTLAW, DCT database]. The plaintiff's reference to this Order is unavailing.

The court's Order of February 12, 1987 proscribed the defendants' primary envisioned defense: justification. In so doing, the court barred the defendants from introducing evidence that their actions were "necessary" to save the lives of the unborn. The court concluded that, absent proof that the plaintiff was aiding the abortion of post-viable fetuses, the decision in *Roe* precluded the relevant use of the justification defense. Thus, the Order restricted the defendants "from inquiring into subjects that are rendered irrelevant by this memorandum." *Id.*

The Order in no way prohibited the defendants from arguing that the court's equity jurisdiction was being invoked improperly by the plaintiff. Although the defendants were precluded from introducing evidence that negated their legal responsibility to the plaintiff, the defendants remained free to challenge the propriety of the court's jurisdiction. Nor is the plaintiff's claim of surprise persuasive. The defendants' proof at trial came entirely from the plaintiff. Both Dr. Klebanoff and Artis Ryder were called by the plaintiff. Three and a half days of plaintiff testimony followed the first clean hands question asked by defense counsel. The plaintiff never asked rehabilitating questions on re-direct designed to explain away the apparent uncovered violations of section 3214(c). The plaintiff also never sought a trial recess to secure countering testimony. The court will not, therefore, preclude the defendants' attempt to raise this equitable defense. The clean hands defense is neither barred by the February Order nor procedurally improper.

881. Consequently, whether the defendants were directly injured by the claimed wrongdoing is irrelevant. *Id.* at 882. Moreover, the maxim is confined only to intentional misconduct that directly affects the particular matter in controversy; it does not apply to collateral wrongdoing. *In re Estate of Pedrick,* 505 Pa. 530, 482 A.2d 215, 223 (1984). "What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." *Thomas P. Carney, Inc. v. School Dist.,* 633 F.Supp. 1273, 1285 (E.D.Pa.1986) (quoting *Republic Molding Corp. v. B.W. Photo Utilities,* 319 F.2d 347, 349 (9th Cir.1963)).

 A successful clean hands defense, therefore, requires the defendants to make two showings. First, they must establish that the plaintiff's conduct is inequitable. Second, they must show that the plaintiff's inequitable conduct relates to the subject matter of the plaintiff's claim. *Ciba-Geigy Corp.,* 747 F.2d at 855.

The defendants have claimed that the plaintiff performs abortion procedures in violation of the Pennsylvania Abortion Control Act ("Act"), 18 Pa.Cons.Stat.Ann. §§ 3201–20 (Purdon 1983). In 1982, the constitutionality of the Act was challenged in this district. *See American College of Obstetricians and Gynecologists v. Thornburgh,* 552 F.Supp. 791 (E.D.Pa.1982), *remanded,* 737 F.2d 283 (3d Cir.1984), *aff'd,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986). Although substantial portions of the Act were eventually declared unconstitutional, the constitutionality of the two provisions cited by the defendants—18 Pa. Cons.Stat.Ann. §§ 3204 & 3214(c)—has never been finally determined. *See Thornburgh v. American College of Obstetricians and Gynecology,* 106 S.Ct. 2169, 2177 n. 9 (1986). The court held oral argument on the clean hands defense in open court outside the hearing of the jury.

The defendants claim that the plaintiff has violated 18 Pa.Cons.Stat.Ann. § 3214(c). Section 3214(c) provides:

> When there is an abortion performed after the first trimester of pregnancy where the physician has certified the unborn child is not viable, the dead unborn child and all tissue removed at the time of the abortion shall be submitted for tissue analysis to a board eligible or certified pathologist. If the report reveals evidence of viability or live birth, the pathologist shall report such findings to the department [5] within 15 days and a copy of the report shall also be sent to the physician performing the abortion. Intentional, knowing, reckless or negligent failure of the physician to submit such an unborn child or such tissue remains to such a pathologist for such a purpose, or intentional, knowing or reckless failure of the pathologist to report any evidence of live birth or viability to the department in the manner and within the time prescribed is a misdemeanor of the third degree.

18 Pa.Cons.Stat.Ann. § 3214(c) (Purdon 1983).

During the course of the trial, the defendants introduced into evidence the plaintiff's monthly abortion statistics reports for June 1985 to October 1986 inclusive. The plaintiff stipulated to the reports' authenticity. The reports were admitted as "S-1". The reports reveal that 357 second trimester abortion procedures were performed at the Center during the seventeen-month period covered by the statistics.[6] Of that total, 56 were attributed to Dr. David Klebanoff.[7]

As required by Federal Rule of Civil Procedure 52(a), the court finds the following facts specially. Dr. Klebanoff has failed to comply with the Act's requirement

---

5. The term "department" denotes the Department of Health of the Commonwealth of Pennsylvania. 18 Pa.Cons.Stat.Ann. § 3203 (Purdon 1983).

6. The report does not specify how many of the 234 abortion procedures performed during July 1986 were second trimester cases. The 357 total, therefore, does not include any amount for July 1986.

7. *See ante,* note 6.

that he submit second trimester tissue remains to a board eligible or board certified pathologist. Dr. Klebanoff testified at trial that he has performed second trimester abortions and that he has no reason to doubt the numbers attributed to him by the monthly statistics reports. He testified further that after he completes a second trimester procedure, the tissue remains are "inspected for completeness" by a pathology expert employed by the plaintiff. This "expert" is neither board certified nor board eligible.[8] Dr. Klebanoff did not testify that he made independent arrangements to comply with section 3214(c). To the contrary, Dr. Klebanoff stated that, following the expert's inspection, he did not know what happened to the remains. This failure to ensure that second trimester tissue remains are submitted to a board certified or eligible pathologist violates the terms of section 3214(c).

The court also finds that the plaintiff bears partial responsibility for this violation. First, as the monthly statistics reveal, Dr. Klebanoff's violations of section 3214(c) have been ongoing and persistent. Moreover, the evidence at trial indicated that the plaintiff was intimately familiar with Dr. Klebanoff's activities while he was present at the Center. There was usually only one physician scheduled to perform abortion procedures at any given time. The court finds that the plaintiff was on constructive, if not actual, knowledge of the Act violations. Assertions to the contrary are simply not credible given the regularity of the violations. Second, the evidence produced at trial indicates that the plaintiff's role in the providing of abortion procedures involved substantially more than merely supplying a surgical area to an independent practitioner. According to Dr. Klebanoff's testimony, by the time he arrived in the operating room, the patient had already disrobed and was situated on the operating table. Dr. Klebanoff spoke with each patient briefly, administered local anesthesia,[9] and performed the procedure. The evidence showed that Dr. Klebanoff did not himself arrange with the plaintiff for the use of the Center's facilities, but rather was assigned a schedule informing him when to appear. Nor did Dr. Klebanoff control the flow of patients. His testimony stated that he would merely remain at the Center until all the patients were seen. Third, as a corporation engaged in the providing of services regulated by the Act, the plaintiff was charged with knowledge of the Act's provisions. Nevertheless, evidently as a service to its physicians, the plaintiff hired an employee to examine the second trimester tissue remains who lacked the qualifications required under the Act.

▇ In light of the foregoing, the court reaches the following conclusions of law which it sets forth specially. The Commonwealth has provided that a physician who intentionally, knowingly, recklessly, or negligently fails to submit second trimester tissue remains to a qualified pathologist shall be charged with a misdemeanor of the third degree. 18 Pa.Cons.Stat.Ann. § 3214(c) (Purdon 1983). Although the plaintiff would not appear to be criminally culpable under section 3214(c), the clean hands defense does not require that the plaintiff's misconduct be punishable as a crime in order to bar relief. 2 Pomeroy, *supra,* at § 404, at 143. Given the level of plaintiff's involvement in organizing physician activities at the Center and the regularity and frequency of the apparent violations of the Act, the court finds that, by failing to take the action necessary to prevent its physician's continued violations of section 3214(c), the plaintiff has engaged in inequitable conduct.[10]

---

8. Artis Ryder, the administrator of the Northeast Women's Center also testified that the plaintiff does not employ a professional pathologist.

9. The doctor's testimony at trial explained that he administers only local anesthesia. If general anesthesia is required, it is administered by an anesthesiologist.

10. The constitutionality of section 3214(c) is directly placed in issue by this ruling. Equity aspires to do what is fair and just; it is "a vehicle for affirmatively enforcing the requirements of conscience and good faith." *Monsanto Co. v. Rohm & Haas Co.,* 456 F.2d 592, 598 (3d Cir.) (quoting *Precision Co. v. Automotive Co.,* 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945)) *cert. denied,* 407 U.S. 934, 92 S.Ct. 2463, 32

For this inequitable conduct to preclude relief, it must relate directly to the subject matter of the plaintiff's claim. *Ciga-Geigy*

L.Ed.2d 817 (1972). These noble ends are not served if the sole reason for condemning the plaintiff's conduct is its physician's violation of an unconstitutional law. If section 3214(c) is unconstitutional, the plaintiff's actions cannot fairly be condemned as inequitable.

As the court observed previously, large segments of the Pennsylvania Abortion Control Act have been declared unconstitutional. *See ante* p. 1155. The United States Supreme Court has found that sections 3205, 3208, 3210(b), 3211(a), 3214(a), and 3214(h) violate a woman's fundamental right to choose to terminate her pregnancy. *Thornburgh v. American College of Obstetricians and Gynecologists*, 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986). Although this statute does not come before the court with the presumption of invalidity, the battered history of this Act reinforces the need for a judicial examination into its constitutionality before an unclean hands defense can be premised on its violation.

The Act's intent provision states that the statute was enacted to protect "the life and health of the woman subject to abortion and to protect the life and health of the child subject to abortion." 18 Pa.Cons.Stat.Ann. § 3202(a) (Purdon 1983). In fact, the Supreme Court has found that the Pennsylvania statute goes much farther than this. In *Thornburgh*, the Court held that the challenged provisions of the Act "are poorly disguised elements of discouragement for the abortion decision." *Thornburgh*, 106 S.Ct. at 2180. Because the provisions presented "an unacceptable danger of deterring the exercise" of the woman's right to choose abortion, they were invalidated. *Id.* at 2182.

All restrictions or requirements touching on the abortion decision are not, however, per se invalid. The Supreme Court has recognized that "state action 'encouraging childbirth except in the most urgent circumstances' is 'rationally related to the legitimate governmental objective of protecting potential life.' " *H.L. v. Matheson*, 450 U.S. 398, 413, 101 S.Ct. 1164, 1173, 67 L.Ed.2d 388 (1981) (*quoting Harris v. McRae*, 448 U.S. 297, 325, 100 S.Ct. 2671, 2692, 65 L.Ed.2d 784 (1980)). Unfortunately, perceiving the contours of the forbidden line over which a legislature may not pass has become a delicate and difficult task indeed. When the statute involves reporting requirements, as section 3214(c) does here, the court must test the requirements to determine whether they "intrude[ ] upon the discretion of the pregnant woman's physician" in a manner which imposes an "undesired and uncomfortable straitjacket." *Thornburgh*, 106 S.Ct. at 2179. If such an intrusion is found, the requirements are unconstitutional.

As discussed above, section 3214(c) requires that the physician submit the tissue remains of a

*Corp.*, 747 F.2d at 855. The court finds that the plaintiff's inequitable conduct bars injunctive relief under its RICO and inter-

second trimester procedure to a board eligible or certified pathologist. By its terms, this provision was established to reveal "evidence of viability or live birth." 18 Pa.Cons.Stat.Ann. § 3214(c) (Purdon 1983). If the pathologist's examination reveals evidence of viability, the pathologist is required to report that finding to the Pennsylvania Department of Health. *Id.* Evidently, the statute anticipates that the Department of Health might then bring criminal charges against the attending physician under section 3210(a) which makes it a third degree felony to intentionally, knowingly, or recklessly induce the abortion of a viable fetus. 18 Pa. Cons.Stat.Ann. § 3210(a) (Purdon 1983).

In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court set out the parameters of the constitutionality of state regulation in this area. In that decision, Justice Blackmun instructed that

State regulation protective of fetal life after viability thus has both logical and biological justifications. If the State is interested in protecting fetal life after viability, it may go so far as to proscribe abortion during that period, except when it is necessary to preserve the life or health of the mother.

*Id.* at 163–64, 93 S.Ct. at 732. Section 3210(a) reflects the Commonwealth's efforts in this regard by criminalizing post-viability abortions. Section 3214(c) is the Commonwealth's attempt at ensuring compliance with this criminal provision.

The court finds no constitutional infirmity with section 3214(c). This section is directed at the attending physician rather than the patient. Thus, it does not pose an unacceptable risk of deterring a woman's choice to have an abortion. The section seeks to force compliance with conduct the Supreme Court has stated may be proscribed by the states and which, in fact, has been proscribed by Pennsylvania. If it "intrudes upon the discretion of the pregnant woman's physician," it does not do so improperly but only to the extent permitted under the guidelines in *Roe*.

The court is aware that it has a responsibility to avoid making constitutional determinations if the case before it can be decided on other, non-constitutional grounds. *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). In this case, the court believed it did not enjoy this luxury. To preclude a substantial portion of the plaintiff's requested relief on the basis of a violation of an unconstitutional statute would have been an indefensible exercise of judicial discretion. Having conducted the examination the court deemed necessary in this case, the court concludes that, in permitting section 3204 to be regularly violated in its facility, the plaintiff has come to equity with unclean hands.

**1158**

ference with contract causes of action, but does not bar relief under its trespass cause of action.

■■■ The plaintiff's trespass claim arises from the defendants' unlawful interference with the Center's right to the exclusive and uninterrupted use of the real property it possesses. This right is neither created nor governed by the nature of the activities the plaintiff conducts on its property. The court concludes that the plaintiff's failure to prevent continuing violations of section 3214(c) is not directly related to its claim for the court's protection of its real property interests. The clean hands maxim will not preclude this relief.

■■ The plaintiff's RICO and interference with contract claims arise from the defendants' deliberate interruptions with the conduct of the plaintiff's business. Unlike the trespass count, the RICO and interference with contract claims directly implicate the clean hands doctrine. The plaintiff is seeking equity's intervention to enjoin the defendants from interrupting the plaintiff's business. If, in the course of its business, the plaintiff is guilty of some misconduct, it cannot fairly invoke the aid of equity to preserve its business interests. It may seek compensation at law, but relief at equity is precluded. Because the court has concluded that the plaintiff improperly failed to prevent its physician's violations of section 3214(c), the clean hands defense bars injunctive relief under the plaintiff's RICO [11] and interference with contract claims. The only injunctive relief this court will order is that necessary to prevent further trespass to the plaintiff's property.[12]

■■ The plaintiff seeks to enjoin six specific types of conduct: (1) entry onto the Center's premises; (2) entry onto the Comly Road parking lot; (3) approaching employees or patients; (4) the use of sound amplification devices; (5) the photographing of patients or staff; and (6) residential picketing. Of these six requests, only the direct entry onto the Center's premises may be enjoined under the plaintiff's trespass cause of action.

Request (2) may be trespass to land, but the trespassed land is not in the possession of the plaintiff. *See Northeast Women's Center, Inc. v. McMonagle,* No. 85–4845, slip op. at 25–27 (E.D.Pa. May 8, 1987).

11. The defendants have argued at length that no injunctive relief is available to a private civil plaintiff under the federal RICO statute. Although there is some support for this contention, *e.g., Trane Co. v. O'Connor Securities,* 718 F.2d 26, 28 (2d Cir.1983); *Dan River, Inc. v. Icahn,* 701 F.2d 278, 290 (4th Cir.1983), none of the cited authorities are binding precedent. Neither the Supreme Court nor the Third Circuit has expressed a view on this question. *See Continental Assurance Co. v. Lombardo,* No. 85–4867, slip op. (E.D.Pa. Mar. 18, 1987) [Available on WESTLAW, DCT database] (noting that issue is "presently in a state of flux" but may be resolved by Third Circuit in near future). However, because this court finds that the clean hands defense precludes injunctive relief under both the plaintiff's RICO and interference with contract claims, a further examination at this time into the availability of a civil RICO injunction would be premature.

12. The defendants also argue that the plaintiff has violated 18 Pa.Cons.Stat.Ann. § 3204. Section 3204 provides:

(a) ... No abortion shall be performed except by a physician after either:

(1) He determines that, in his best clinical judgment, the abortion is necessary; or

(2) He receives what he reasonably believes to be a written statement signed by another physician, hereinafter called the "referring physician," certifying that in this referring physician's best clinical judgment the abortion is necessary.

18 Pa.Cons.Stat.Ann. § 3204(a) (Purdon 1983). This provision mandates that the presiding physician conduct a private medical consultation with the patient "in a place, at a time and of a duration reasonably sufficient to enable the physician to determine whether, based on his best clinical judgment, the abortion is necessary." 18 Pa.Cons.Stat.Ann. § 3204(b) (Purdon 1983).

This court is not called upon to determine whether penalties under this provision, or under section 3214(c), should be imposed in this case. The sole question before the court at this time is whether the plaintiff should be denied injunctive relief because it has acted inequitably. In standing by passively while its physician frequently and persistently violated section 3214(c) of the Act, the court finds that the plaintiff has come to equity with unclean hands. Because this conduct provides sufficient independent grounds for denying injunctive relief, the asserted violations of section 3204 need not be addressed.

Thus, plaintiff is not the proper party to assert this request. An injunction may issue only to remedy an interference with the legal rights of the plaintiff, not the rights of a third-party. *See* 42 Am.Jur.2d *Injunctions* § 29, at 765–66 (1969). Requests (4) and (6) may be actionable under state law nuisance, but do not support an injunctive remedy for trespass. *See Kramer v. Pittsburgh Coal Co.,* 341 Pa. 379, 19 A.2d 362, 363 (1941). Requests (3) and (5) are simply not trespass.

### 2. *Actual Success on the Merits*

After applying the clean hands analysis to the plaintiff's complaint, the court found that its equitable jurisdiction extends only to enjoining trespass onto the Center's property. The issue of trespass was sent to the jury. Through answering special interrogatories, the jury found the following twenty-four persons liable for trespass: Donna Andracavage, Paul C. Armes, Deborah Baker, Annemarie Breen, Mary Bryne, Margaret Caponi, Walter G. Gies, Juan Guerra, Thomas Herlihy, Ellen Jones, Ann Knorr, Kathy Long, Roland Markum, Thomas McIlhenny, Michael McMonagle, Patricia McNamara, Robert Moran, Stephanie Morello, John J. O'Brien, Dennis Sadler, Susan Silcox, Henry Tenaglio, Joseph P. Wall and Howard Walton. As to these twenty-four persons, the plaintiff has actually succeeded on the merits of its trespass claims.

### 3. *Balance of Equities*

The court has little hesitation in holding that the balance of equities favors granting the plaintiff an injunction against trespass. Our legal tradition is replete with time-honored protections of the right to own property. The sanctity of this right has been memorialized by the common law and codified in statutes. It is guaranteed by the Fourteenth Amendment to the United States Constitution. Inherent in this right is the fundamental corollary privilege

to exclude others. *Kaiser Aetna v. United States,* 444 U.S. 164, 179–80, 100 S.Ct. 383, 392–93, 62 L.Ed.2d 332 (1979).

In contrast, no provision of the Constitution grants the defendants a right to enter the private property of another, without permission, for the purposes of speech or symbolic conduct. *See Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040–41, 64 L.Ed.2d 741 (1980); *Lloyd Corp. v. Tanner,* 407 U.S. 551, 569, 92 S.Ct. 2219, 2229, 33 L.Ed.2d 131 (1972). Nor does the First Amendment protect expressive conduct characterized by violence.[13] *See NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 916, 102 S.Ct. 3409, 3427, 73 L.Ed.2d 1215 (1982). The court concludes that the requested injunction against trespass serves the public interest in protecting private property rights without offending another citizen's right of free expression. An injunction will be granted.

### D. *Scope of Injunction*

In fashioning the appropriate injunctive relief, the court seeks to draft the least intrusive, effective remedy. *Ante* at 1152–53. After presiding over both a preliminary injunction hearing and a full trial in this case, the court has reached the conclusion that a limited injunction, drawn merely to enjoin entry into the plaintiff's premises, is an impractical and unrealistic remedy.

The court has heard testimony that the plaintiff's doorways have been blocked and its entire facility has been surrounded. There has been at least one attempted entry through the plaintiff's security system and, as the court suggested previously, every reason to anticipate more such attempts. During the four previous entries, the defendants rushed in the main doors so quickly that staff members were jostled or knocked down.

The court's goal in drafting this injunction is to create a remedy that not only prevents unlawful entry into the plaintiff's

---

**13.** The defendants have failed to establish that the Pennsylvania Constitution guarantees them any greater right of protest than that afforded under the federal Constitution. *Cf. Crozer Chester Medical Center v. May,* 352 Pa.Super. 51, 506 A.2d 1377, 1381 (1986) (injunction prohibiting pro-life protesters from demonstrating on private property did not offend Pennsylvania Constitution).

facility, but also reduces the risk that the tension, frustration, and energy inherent in these confrontational protests will erupt into a rush on the building's entrance. Against this goal, the court must carefully balance the defendants' First Amendment rights to free expression.

■ Due to the features of the property involved, there are no clearly determinable limits to set as barriers for protest activities. However, the defendants have a constitutional right to protest on the public sidewalks abutting Comly Road.[14] They may be permitted to protest from that location. Although it is true that the plaintiff has no property interest in the Comly Road Associates parking lot, it is equally true that the defendants have no constitutional right to protest on this private property. *See Pruneyard Shopping Center,* 447 U.S. at 81, 100 S.Ct. at 2041. Barring them from that location, therefore, does not impinge on their First Amendment rights of free speech, but does significantly reduce the risk of future trespass.

■ In the course of their activities, the defendants may peaceably attempt to communicate with those entering or leaving the facility. The Constitution does not afford anyone "the general right to be free from being approached." *Heffron v. International Soc'y for Krishna Consciousness, Inc.,* 452 U.S. 640, 657 n. 1, 101 S.Ct. 2559, 2569, n. 1, 69 L.Ed.2d 298 (1981) (Brennan, J., concurring in part and dissenting in part). But the Constitution also does not give the defendants the right to inhibit the ingress or egress of persons or traffic. *Cameron v. Johnson,* 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). The defendants may attempt to persuade others to stop and hear their message, but they are expressly enjoined from blocking the way of unwilling listeners. *Cohen v. California,* 403 U.S. 15, 21–22, 91 S.Ct. 1780, 1786–87, 29 L.Ed.2d 284 (1971).

14. *See Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). In *Hague,* Justice Black wrote
 Wherever the title of streets and parks may rest, they have immemorially been held in trust for use of the public and, time out of mind, have been used for purposes of assem-

The court will not order the presence of the United States Marshal to the Comly Road site at this time. The assertion that any defendant will violate this injunction is premature. Because this court will retain jurisdiction in this matter, the plaintiff may, at some future time, file a suggestion of contempt in the event this injunction is ignored.

An injunction Order is attached.

## II. JUDGMENT NOTWITHSTANDING THE VERDICT

By answering special interrogatories, the jury awarded the plaintiff a total of $48,000 in punitive damages on the state law trespass claim. Against each of the twenty-four trespassers, the jury assessed $2,000. The defendants contend that it was error to submit the issue of punitive damages to the jury. The court agrees, and will enter judgment for the defendants on this issue notwithstanding the verdict.

■ The defendants offer four arguments in support of their motion. First, the defendants contend that the plaintiff has failed to properly demand punitive damages. Although the plaintiff's initial complaint included a prayer for punitive damages, the plaintiff's Pretrial Memorandum submitted to the court on November 17, 1986 failed to state any such demand. Local Rule of Civil Procedure 21(c) provides:

(c) **Pretrial Memoranda.** Pretrial memoranda shall be filed and served at such time as the court shall direct in the scheduling order or by any other express order.

Unless the order otherwise directs, the pretrial memorandum of each party shall contain the following:

\* \* \* \* \* \*

bly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. *Id.* at 515–16, 59 S.Ct. at 964 (Opinion of Roberts, J.).

(3) A list of *every item of monetary damages claimed*, including (as appropriate) computations of lost earnings and loss of future earning capacity, medical expenses (itemized), property damages, etc. If relief other than monetary damages is sought, information adequate for framing an order granting the relief sought shall be furnished.

Loc.R.Civ.P. 21(c) (emphasis added). The plaintiff has never modified its Pretrial Memorandum to include a claim for punitive damages. Consequently, the plaintiff's punitive damages demand fails to conform to the requirements of our Local Rules.

Second, the defendants contend that punitive damages were precluded by the court's March 4, 1987 Pretrial Order. In the twenty-eight months that it has been on our docket, this case has been marked by an enormous paper flow and constantly shifting positions. By the time the trial approached, the actual posture of the case was decidedly unclear. The court conducted a pretrial conference in early March to clarify this ambiguity and define the pending issues. As a result of the conference discussions, the court issued an Order dated March 4, 1987 which established that "[t]he damage elements in this matter are limited to: (a) the hiring of security guards and equipment; (b) increase in rental expense; (c) increase in overtime of personnel hours and use of personnel in court proceeding; and (d) repair and replacement of medical equipment." *Northeast Women's Center, Inc. v. McMonagle*, No. 85–4845 (E.D.Pa. Mar. 4, 1987). The plaintiff has never expressed to the court any objection to this Pretrial Order, nor has it filed any motion for reconsideration or modification.[15] Thus, the plaintiff's subsequent demand for punitive damages is inconsistent with this Order.

Third, the defendants argue that the plaintiff's request for a charge on punitive damages was untimely. The defendants recall correctly that the plaintiff's original suggested points, filed April 20, 1987, did not contain a charge on punitive damages. The proposed punitive damages charge was filed separately as a supplemental point on May 11, 1987, the Monday following closing arguments. Federal Rule of Civil Procedure 51 provides that "[a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests." Because the punitive damages point was filed after the closing arguments, it was untimely. *See Jackson v. Baldwin-Lima-Hamilton Corp.*, 252 F.Supp. 529, 531–32 (E.D.Pa.), *cert. denied*, 385 U.S. 803, 87 S.Ct. 189, 17 L.Ed.2d 117 (1966).

Fourth, the defendants argue that the plaintiff renewed its punitive damages request at a point which precluded them from introducing evidence in response. According to the defendants, the plaintiff first suggested to the jury that they might be instructed on punitive damages in its closing rebuttal—after the defendants had rested and after they had completed their closings. Although the defendants' recollection, if true, suggests a possible breach of fairness, the focus of this pending motion is much broader. The court examines whether the instruction itself was properly given, not whether the plaintiff had improperly anticipated the court's decision to give it.

The plaintiff rejects the defendants' arguments as "narrow and formalistic." Plaintiff's Memorandum (Document # 194) at 1. The plaintiff offers the alternate view that, absent a showing of substantial prejudice, its procedural errors should not be grounds for setting aside the jury's verdict. The plaintiff cites Federal Rule of Civil Procedure 54(c) which provides that "every final judgment shall grant the relief to which the party in whose favor it is

---

15. The federal rules establish that a pretrial order, entered after a pretrial conference and reciting the action taken therein, "shall control the subsequent course of the action unless modified by a subsequent order." Fed.R.Civ.P.

16(e). When issued in this context, the pretrial order "limits the issues for trial and in substance takes the place of pleadings covered by the pretrial order." *Basista v. Weir*, 340 F.2d 74, 85 (3d Cir.1965).

rendered is entitled, even if the party has not demanded such relief in his pleadings."

In interpreting Rule 54(c), the Supreme Court has cautioned that a party may not be "entitled" to relief within the meaning of this rule "if its conduct of the cause has improperly and substantially prejudiced the other party." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). The court finds that such substantial prejudice is evident here.

Prior to trial, the plaintiff filed a motion in limine to preclude the defendants from putting on evidence of their motives in protesting at the Center. In the accompanying memorandum of law, the plaintiff asserted that "motive is not an element of any of the claims raised and evidence of motive is not directly admissible." Plaintiff's Memorandum of Law (Document # 87) at 1. The defendants vigorously contested this motion. They asserted that their beliefs were the sine qua non of their actions and, therefore, evidence of such beliefs was admissible. Defendants' Answer to Motion (Document # 94) at 2.

On February 12, 1987, the court issued an Order granting the plaintiff's motion. *Northeast Women's Center, Inc. v. McMonagle*, No. 85–4845, slip op. (E.D.Pa. Feb. 12, 1987) [Available on WESTLAW, DCT database]. The court concluded that, given the posture of the case at the time of the Order, evidence of the defendants' motives lacked the relevance necessary to make it admissible at trial. On numerous occasions during the course of the trial, plaintiff's counsel objected to the defendants' attempts to introduce motive evidence. Counsel reiterated the plaintiff's position that the proffered evidence was not relevant and that the defendants were bound by the court's February Order. On most occasions, the court agreed with plaintiff's counsel and sustained the objections on relevance grounds.

When the plaintiff submitted its supplemental jury instruction on punitive damages the day of the charge, the court was reluctant to give the proposed instruction. However, due to the complexities of the case and the waiting jury, the court elected to give the instruction and cure its error, if any was found, on a motion JNOV.

It is now clear to the court that the defendants' motive evidence should have been considered by the jury during their deliberations on punitive damages. In the Commonwealth of Pennsylvania, as in most jurisdictions, punitive damages are awarded for "outrageous" conduct, conduct "done with bad motive or with reckless indifference to the interests of others." *Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355, 358 (1963); *Hughes v. Babcock*, 349 Pa. 475, 37 A.2d 551, 554 (1944). As the court instructed the jury, the law permits an award of punitive damages in order to punish the wrongdoer for extraordinary misconduct and to serve as a warning to others not to engage in similar misconduct. *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1097 & 1097 n. 12 (1985). The jury is called upon to assess all the surrounding circumstances when considering whether punitive damages are warranted, including the defendants' motives. *See Chambers*, 192 A.2d at 358; *Hughes*, 37 A.2d at 554. Because the jury should have considered the defendants' motive evidence when it deliberated on the issue of punitive damages, the plaintiff's procedural errors substantially prejudiced the defense.[16] The jury's punitive damages award must, therefore, be set aside.

An Order follows.

## JUDGMENT

1. In accordance with the jury's answers to special interrogatories, it is ORDERED that:

---

**16.** The defendants also note that Pennsylvania law entitled the jury to consider a defendant's wealth when assessing punitive damages. *See Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088, 1096 (1985); Restatement (Second) of Torts, § 908(2) (1979). Like the proffered evidence of motive, the court precluded proof of wealth on the basis of relevance. Had the court been aware that the plaintiff was seeking punitive damages, it would have overruled the plaintiff's objection.

(a) As to the Racketeer Influenced and Corrupt Organization Act claims, the jury's verdict of $887 is TREBLED as provided under 18 U.S.C. § 1964(c). Judgment is ENTERED in favor of plaintiff Northeast Women's Center, Inc. and against defendants Donna Andracavage, Paul C. Armes, Deborah Baker, Annemarie Breen, Mary Bryne, Margaret Caponi, Linda Corbett, Helen Gaydos, Walter G. Gies, Juan Guerra, Thomas Herlihy, Ellen Jones, Anne Knorr, Kathy Long, Roland Markum, Thomas McIlhenny, Michael McMonagle, Patricia McNamara, Robert Moran, Stephanie Morello, John J. O'Brien, Dennis Sadler, Susan Silcox, Henry Tenaglio, Joseph P. Wall, Howard Walton, and Patricia Walton in the amount of Two Thousand, Six Hundred Sixty-One Dollars ($2,661.00).

(b) As to the state law trespass claim, judgment is ENTERED in favor of plaintiff Northeast Women's Center, Inc. and against defendants Donna Andracavage, Paul C. Armes, Deborah Baker, Annemarie Breen, Mary Bryne, Margaret Caponi, Walter G. Gies, Juan Guerra, Thomas Herlihy, Ellen Jones, Anne Knorr, Kathy Long, Roland Markum, Thomas McIlhenny, Michael McMonagle, Patricia McNamara, Robert Moran, Stephanie Morello, John J. O'Brien, Dennis Sadler, Susan Silcox, Henry Tenaglio, Joseph P. Wall, and Howard Walton in the amount of Forty-Two Thousand Eighty-Seven Dollars and Ninety-Five Cents ($42,087.95).

(c) As to the state law intentional interference with contract claim, judgment is ENTERED in favor of plaintiff Northeast Women's Center, Inc. and against defendants Stephanie Morello, Joseph P. Wall, and Howard Walton. Pursuant to the jury's finding that the plaintiff suffered no proximate loss as a result of this interference, no money damages are awarded.

2. In consideration of the defendants' motion for judgment notwithstanding the verdict on the issue of punitive damages, and the plaintiff's response thereto, and for the reasons set out in section II of the foregoing Memorandum, it is ORDERED that:

(a) The defendants' motion for judgment notwithstanding the verdict is GRANTED as to punitive damages.

(b) The jury's award of $48,000 in punitive damages is SET ASIDE.

(c) Judgment is ENTERED in favor of the defendants and against the plaintiff on the issue of punitive damages.

3. In consideration of the plaintiff's petition for permanent injunction and the defendants' response thereto, and for the reasons set forth in section I of the foregoing Memorandum, it is ORDERED that defendants Donna Andracavage, Paul C. Armes, Deborah Baker, Annemarie Breen, Mary Bryne, Margaret Caponi, Walter G. Gies, Juan Guerra, Thomas Herlihy, Ellen Jones, Anne Knorr, Kathy Long, Roland Markum, Thomas McIlhenny, Michael McMonagle, Patricia McNamara, Robert Moran, Stephanie Morello, John J. O'Brien, Dennis Sadler, Susan Silcox, Henry Tenaglio, Joseph P. Wall, and Howard Walton, are PERMANENTLY and FINALLY ENJOINED AND RESTRAINED from:

(a) Entering the premises of the Northeast Women's Center, Inc. located at 2751/2811/2813 Comly Road in Philadelphia, Pennsylvania.

(b) Entering the premises of L.P. Partnership or Comly Road Associates located at 2801–2813 Comly Road in Philadelphia, Pennsylvania for the purposes of protesting, picketing, demonstrating, chanting, shouting, leafletting, or using sound amplication devices.

(c) Blocking or attempting to block, barricade, or in any other manner obstruct the entrances to the Northeast Women's Center, Inc. or the premises of L.P. Partnership and Comly Road Associates located at the addresses listed above.

(d) Inhibiting or impeding or attempting to inhibit or impede the free and unmolested ingress and egress to the Northeast Women's Center, Inc. or the premises of L.P. Partnership and Comly Road Associates located at the address listed above.

(e) Encouraging, inciting, or securing other persons to commit any of the acts listed in parts (a), (b), (c), or (d) above.

4. No portion of this Judgment shall be construed by any law enforcement officer so as to restrain the peaceful protesting, picketing, demonstrating, chanting, or leafletting by the defendants on the sidewalks abutting Comly Road EXCEPT as provided in paragraph 3(c), (d) and (e) above.

5. Defendants Donna Andracavage, Paul C. Armes, Deborah Baker, Annemarie Breen, Mary Bryne, Margaret Caponi, Walter G. Gies, Juan Guerra, Thomas Herlihy, Ellen Jones, Anne Knorr, Kathy Long, Roland Markum, Thomas McIlhenny, Michael McMonagle, Patricia McNamara, Robert Moran, Stephanie Morello, John J. O'Brien, Dennis Sadler, Susan Silcox, Henry Tenaglio, Joseph P. Wall, and Howard Walton are hereby ORDERED to appear in Courtroom 8A, United States Courthouse, 601 Market Street, Philadelphia, Pennsylvania on Monday, June 15, 1987 at 10:00 a.m.

6. The court RETAINS JURISDICTION in this matter.