539 A.2d 1325
**COMMONWEALTH of Pennsylvania**
v.
**Joseph P. WALL, Appellant.**
Superior Court of Pennsylvania.
Argued Oct. 16, 1987.
Filed March 24, 1988.

536

John E. O'Donnell, Pittsburgh, for appellant.

Edward M. Clark, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before BROSKY, DEL SOLE and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for criminal trespass and defiant trespass. Appellant contends that (1) the trial court erred in refusing to allow him to present the defense of justification; (2) the trial court erred in refusing to charge the jury regarding the defense of justification; (3) the trial court erred in instructing the jury that it should find appellant guilty of criminal trespass; and (4) his sen-

tence of incarceration is unconscionably harsh under the circumstances. For the reasons that follow, we affirm the judgment of sentence.

The facts of the case were summarized by the trial court as follows:

The defendant, Joseph P. Wall of Philadelphia, co-defendant, Joan Andrews of Delaware, and thirteen other men and women from the Pittsburgh area forced their way into the offices of the Women's Health Services in downtown Pittsburgh at approximately 7:30 a.m. on May 10, 1985. The defendants were engaged in what they called a "rescue mission." Their purpose was to hinder or stop the performance of abortions at this facility. (N.T. 11/6/85, p. 365). To this end, Mr. Wall and Ms. Andrews proceeded to Examination Room #6 entered, locked the door, and barricaded themselves therein by positioning the examination tables against the door. [*Id.* at 340, 399]. Ms. Andrews then went through a cabinet containing sterilized instruments and unwrapped several of them, exposing them to the air and rendering them unsterile. [*Id.* at 340]. They next placed literature and stickers on various pieces of furniture and equipment in the examination room [*Id.* at 340–42, 399–400].

After they distributed this literature, they began to pray aloud [*Id.* at 348]. During their prayers, City of Pittsburgh police officers announced their presence and advised them that they were trespassing and directed them to leave [*Id.* at 348–49]. Mr. Wall and Ms. Andrews answered that they "could not leave as long as abortions would be taking place ..." [*Id.* at 349]. Mr. Wall then read a prepared statement to police after which the police repeated their demand that the pair come out of the room. [*Id.* at 350]. The police officers then cut the lock off the door and forced it open.

The defendants were placed under arrest. They were dragged out of the room and down a hallway as they passively resisted attempts of the police officers to escort them out of the room.

\* \* \* \* \* \*

A criminal information was filed charging Wall and Andrews with the crimes of Criminal Trespass, 18 Pa.C. S.A. § 3503(a)(1); Defiant Trespass, 18 Pa.C.S.A. § 3503(b)(1)(i); Criminal Mischief, 18 Pa.C.S.A. § 3304(a)(1); and Resisting Arrest or Other Law Enforcement, 18 Pa.C.S.A. § 5104. They were found guilty by a jury of Criminal Trespass and Defiant Trespass, and acquitted of Criminal Mischief and Resisting Arrest on November 12, 1985. Post-trial motions were timely filed, argued, and denied. Joseph Wall was sentenced on July 7, 1986, to a term of imprisonment of not less than six months nor more than twelve months at the State Correctional Institute at Mercer, and a concurrent period of probation of three years. This appeal followed.

Trial Court Opinion at 1–3.

■ Appellant first contends that the trial court erred in refusing to allow him to present the defense of justification.[1] The defense of justification is defined as follows:

Conduct which the actor believes to be necessary to avoid a harm or evil to himself or another is justifiable if:

(1) the harm sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;

(2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

18 Pa.C.S.A. § 503(a). To utilize the defense of justification, the harm or evil sought to be avoided must be readily

1. Although the issue of justification as a defense to criminal prosecutions arising from demonstrations at abortion clinics has never been addressed by our appellate courts, it has been addressed by courts in other jurisdictions, who have unanimously determined that the justification defense is not available to abortion protesters. *See Cleveland v. Municipality of Anchorage*, 631 P.2d 1073 (Alaska 1981); *People v. Stiso*, 93 Ill.App.3d 101, 48 Ill.Dec. 687, 416 N.E.2d 1209 (1981); *People v. Krizka*, 92 Ill.App.3d 288, 48 Ill.Dec. 141, 416 N.E.2d 36 (1981); *Sigma Reproductive Health Center v. State*, 297 Md. 660, 467 A.2d 483 (1983); *City of St. Louis v. Klocker*, 637 S.W.2d 174 (Mo.App.1982).

apparent. *Commonwealth v. Capitolo,* 508 Pa. 372, 378, 498 A.2d 806, 808 (1985) (involving use of justification defense in prosecution against demonstrators at nuclear power plant). "The defense cannot be permitted to justify acts taken to foreclose speculative and uncertain dangers, and is therefore limited in application to acts directed at the avoidance of harm that is reasonably certain to occur." *Id.* Moreover, "the defense cannot be available in situations where the conduct some perceive to engender public disaster has been specifically approved of by legislation making it legal conduct...." *Commonwealth v. Berrigan,* 509 Pa. 118, 123, 501 A.2d 226, 229 (1985) (defendants precluded from invoking justification defense in prosecution arising from demonstration at facility of manufacturer of nuclear weapon components).

In order, then, to be entitled to an instruction on justification as a defense to the crime charged, the actor must first offer evidence that will show:

(1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

(2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*Commonwealth v. Capitolo, supra,* 508 Pa. at 378, 498 A.2d at 809. The trial court may disallow the justification defense if a defendant fails to proffer sufficient evidence to establish even one of the above factors. *Id.,* 508 Pa. at 379, 498 A.2d at 809.

Here, the Commonwealth filed a motion in limine to preclude appellant from raising the defense of justification.

Following a hearing,[2] the trial court granted the Commonwealth's motion, finding that appellant was unable to establish any of the four requirements set forth in *Capitolo.* N.T. November 6, 1985 at 51. For the following reasons, we agree that appellant was not entitled to raise the defense of justification.

■ First, appellant was unable to demonstrate that he was faced with a clear and readily apparent *harm.* He argues that the harm that justifies his actions is the imminent threat to unborn children. Brief for Appellant at 10. The law, however, does not recognize abortions as a harm.[3]

2. At the hearing, appellant asserted that the justification defense should apply because the evidence would show, *inter alia,* the following:
  (1) life commences at conception;
  (2) abortion imminently threatens thousands of people (unborn children) daily;
  (3) abortion threatens the foundation of our society; and,
  (4) his "rescue mission" was the only effective means of saving human lives.
Trial Court Opinion at 5.

3. We do not question the sincerity of appellant's convictions. We note, however, that by characterizing his efforts as an attempt to save "lives", i.e., unborn children, appellant assumes as fact a matter that is at the very heart of the most hotly contested aspect of the abortion controversy. In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court stated that:

> We need not resolve the difficult question of when life begins. When those trained in the respective disciplines of medicine, philosophy, and theology are unable to arrive at any consensus, the judiciary, at this point in the development of man's knowledge, is not in a position to speculate as to the answer.

*Id.* at 159, 93 S.Ct. at 715. Thus, although appellant's argument regarding abortions as a harm may possess force as a personal philosophical or religious matter, as a legal matter the "harm" involved remains, at best, merely speculative.

We recognize that people differ strongly in their views concerning abortion. Regardless of one's personal beliefs, however, a woman possesses a constitutional right to obtain an abortion. The doctrine of stare decisis "demands respect in a society governed by the rule of law" and it is especially compelling that we adhere to the doctrine of stare decisis in applying the principles of *Roe v. Wade. Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 419–20, n. 1, 103 S.Ct. 2481, 2487, n. 1, 76 L.Ed.2d 687 (1983). "[I]t should go without saying that the vitality of these constitutional principles cannot be allowed to yield simply because of disagreement with them." *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S.

In concluding that a woman's right of personal privacy, grounded in the United States Constitution, encompasses the abortion decision, the Supreme Court in *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), held that:

(a) For the stage prior to approximately the end of the first trimester, the abortion decision and its effectuation must be left to to the medical judgment of the pregnant woman's attending physician.

(b) For the stage subsequent to approximately the end of the first trimester, the State, in promoting its interest in the health of the mother, may, if it chooses, regulate the abortion procedure in ways that are reasonably related to maternal health.

(c) For the stage subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother.

*Id.* at 164–65. *See also Thornburgh v. American College of Obstetricians & Gynecologists*, 476 U.S. 747, 759, 106 S.Ct. 2169, 2178, 90 L.Ed.2d 779, 792 (1986) (constitutional principles that led to decision in *Roe* in 1973 still provide compelling reason for recognizing constitutional dimensions of woman's right to decide whether to end her pregnancy); *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 427, 103 S.Ct. 2481, 2491, 76 L.Ed.2d 687 (1983) (woman's right to abortion is based firmly on individual's longstanding "freedom of personal choice in matters of marriage and family life"); *Planned Parenthood Assoc. v. Fitzpatrick*, 401 F.Supp. 554, 563 (E.D.Pa.1975), *aff'd mem. sub nom. Franklin v. Fitzpatrick*, 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976) (fundamental right to privacy encompasses woman's decision to have abortion, which can be limited only by compelling state interest). In the face of such clearly established precedent we cannot conclude that

747, 759, 106 S.Ct. 2169, 2178, 90 L.Ed.2d 779, 792–93 (1986) (quoting *Brown v. Board of Education*, 349 U.S. 294, 300, 75 S.Ct. 753, 756, 99 L.Ed. 1083 (1955)).

the abortions appellant sought to prevent presented a clear and imminent harm.[4]

■ Second, appellant was unable to establish that he could reasonably expect that his demonstration at Women's Health Services would be effective in preventing what he considered a "greater harm"—i.e., abortions. Appellant's action disrupted the Clinic only temporarily. Certainly, the women scheduled to have abortions at the Clinic that morning were free to go to another examination room or another clinic to have an abortion or could have changed the appointment to another day. There is no evidence that any women discontinued their efforts to obtain an abortion as the result of appellant's actions. Because it would have been unrealistic for appellant to expect that he would be allowed to remain in the Clinic and disrupt their services indefinitely, we conclude that appellant could not reasonably believe that his actions would be effective in preventing abortions.

■ Third, appellant was unable to establish that there was no legal alternative available that would have been effective in abating the harm. Certainly, appellant was free to stand on a public street outside of Women's Health Services and exercise his first amendment rights by providing information regarding abortions to persons entering the Clinic. In addition, appellant can lobby for legislative reforms in the area of abortion. Either of these legal alternatives to criminal trespass would be a no less effective means of preventing abortions than the action taken by appellant in this case.

■ Fourth, appellant has failed to demonstrate that the Legislature has not acted to preclude the defense of justification by a clear and deliberate choice regarding abortion. Although the Legislature has enacted legislation *regulating*

**4.** Because neither party argues to the contrary, we assume that the Women's Health Services performed abortions in compliance with existing law. We do not mean to suggest, however, that had Women's Health Services been engaged in performing unlawful abortions, appellant's actions would have been justified.

abortions, *see* 18 Pa.C.S.A. §§ 3201–3220,[5] it has not enacted legislation *prohibiting* a woman from obtaining an abortion. Because the Legislature has not enacted legislation prohibiting a woman from obtaining an abortion prior to viability, (and, indeed, cannot constitutionally enact such legislation, *see Roe v. Wade, supra*) we conclude that it has effectively precluded the justification defense with regard to protests at abortion facilities. Accordingly, appellant is unable to establish *any* of the four requirements that would entitle him to raise justification as a defense to criminal trespass or defiant trespass at an abortion facility. *See Commonwealth v. Capitolo, supra.*

Despite the above, appellant nevertheless insists that he was justified in violating the law in this case because his actions were motivated by higher principles. To accept appellant's argument would be tantamount to judicially sanctioning vigilantism. If every person were to act upon his or her personal beliefs in this manner, and we were to sanction the act, the result would be utter chaos.[6] In a society of laws and not of individuals, we cannot allow each individual to determine, based upon his or her personal beliefs, whether another person may exercise her constitutional rights and then allow that individual to assert the

5. Portions of the Abortion Control Act, 18 Pa.C.S.A. §§ 3201–3220, have been declared unconstitutional. *See Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986).

6. We are guided by Justice Brandeis' dissent in *Olmstead v. United States,* 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928), when, arguing that the law should place limits on the actions of every one, including the government, he stated that

> In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously.... Crime is contagious. If the government becomes a lawbreaker; it breeds contempt for the law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face.

*Id.* at 485, 48 S.Ct. at 575.

defense of justification to escape criminal liability. We recognize that, despite our proscription, some individuals, because of firmly held and honestly believed convictions, will feel compelled to break the law. If they choose to do so, however, they must be prepared to face the consequences. Thus, such private attempts to circumvent the law with the aim to deprive a pregnant woman of her right to obtain an abortion will not be tolerated by this Court.[7] Accordingly, for the reasons set forth above, we conclude that the trial court properly determined that appellant was not entitled to raise the justification defense.

Appellant next contends that the trial court erred in refusing to charge the jury regarding the defense of justification. Because we hold that appellant was not entitled to assert the justification defense at trial, we conclude that he was not entitled to a jury instruction regarding the defense.

Appellant next contends that the trial court erred in instructing the jury that it should find him guilty of criminal trespass. This issue is waived. Appellant argues that the following instruction was erroneous:

> If after considering all of the evidence, you find that the Commonwealth has established each of these elements beyond a reasonable doubt, then you must find the defendants guilty. On the other hand, if you find that the Commonwealth has failed to establish each of these elements beyond a reasonable doubt, you must find the defendants not guilty.

N.T. November 6, 1985 at 502.

> If after considering all of the evidence, you find that the Commonwealth has established each of these elements

---

7. As was stated by the Alaska Supreme Court in *Cleveland v. Municipality of Anchorage,* 631 P.2d 1073 (Alaska 1981):

> If the legislature cannot delegate a "veto power" to the patient's parent or spouse, *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976), we think it unlikely that a state court could delegate such a "veto power" to strangers, to be exercised in such an obtrusive manner.

*Id.* at 1080 n. 5.

beyond a reasonable doubt, then you should find the defendant guilty of criminal trespass. Otherwise, you must find the defendant not guilty.

*Id.* at 516–17. Appellant has not preserved this claim for our review because he failed to make an objection to the court's charge to the jury. *See Commonwealth v. Jensch,* 322 Pa.Superior Ct. 304, 316, 469 A.2d 632, 638 (1983) (failure to specifically object to trial court's charge waives issue). *See also* Pa.R.A.P. 302(b); Pa.R.Crim.P. 1119(b). Accordingly, we will not address the merits of this issue.

■ Appellant last contends that his sentence of incarceration is unconscionably harsh under the circumstances. The issue raised by appellant concerns a discretionary aspect of sentencing. The requirements of Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987) therefore apply. Appellant has failed to include in his brief "a concise statement of the reasons relied upon for allowance of appeal" as required by Rule 2119(f) and *Tuladziecki.* In *Commonwealth v. Krum,* 367 Pa.Superior Ct. 511, 533 A.2d 134 (1987), this Court, sitting en banc, recently held that an appellant's failure to comply with Rule 2119(f) and *Tuladziecki,* if not objected to by appellee, is a waivable procedural violation. *Id.,* 367 Pa.Superior Ct. at 519, 533 A.2d at 138.

Here, however, the Commonwealth has objected to appellant's failure to include in his brief a concise statement of the reasons relied upon for allowance of appeal. Brief for Appellee at 17–19. Accordingly, because appellant failed to comply with Rule 2119(f) and *Tuladziecki,* and because the Commonwealth has objected, we must disallow appellant's appeal as to this issue.[8]

For the above-stated reasons, we affirm the judgment of sentence.

Affirmed.

---

8. We note that appellant did not file a reply brief with this Court in an attempt to comply with Rule 2119(f) and *Tuladziecki.*